**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW JERSEY**
**(NEWARK)**

| | | |
|---|---|---|
| In re COGNIZANT/TRIZETTO DATA SECURITY INCIDENT | §<br>§<br>§ | Case No. 2:25cv18908-MCA-AME |

**MEMORANDUM IN SUPPORT OF MOTION TO**
**TRANSFER CONSOLIDATED ACTIONS TO THE**
**EASTERN DISTRICT OF MISSOURI**

**INTRODUCTION**

Defendants TriZetto Provider Solutions, LLC ("**TPS**") and Cognizant Technology Solutions Corporation ("**Cognizant**") move pursuant to 28 U.S.C. § 1404(a) for an order transferring this consolidated action to the Eastern District of Missouri, Eastern Division (the "**Motion to Transfer**").[1]

The Court should transfer this consolidated action to the Eastern District of Missouri, Eastern Division under the well-established "first-filed rule" because it is substantially similar to the first-filed *Niessing v. TriZetto* action pending there. Further, the Eastern District of Missouri, Eastern Division is both a proper and superior venue to this District because TPS (the primary defendant) has its principal place of business in the Eastern District of Missouri, whereas the only, attenuated connection to this District is that it is the location of TPS's apex parent company Cognizant, which has been improperly named in some of the actions consolidated here.

Plaintiffs may respond that the Court should abstain from deciding this Motion because

---

[1] TPS does not waive, and expressly reserves, its right to seek dismissal under Rule 12(b)(2) on the basis that this Court lacks personal jurisdiction over it given its lack of relevant forum contacts. The Court can and should decide this § 1404 motion for venue transfer without first determining whether it has personal jurisdiction over TPS. *See Lafferty v. St. Riel*, 495 F.3d 72, 80 (3d Cir. 2007).

Plaintiffs have filed a motion with the Judicial Panel on Multidistrict Litigation ("**JPML**") seeking transfer of all related actions to this district for centralization in an MDL proceeding under 28 U.S.C. § 1407. But Plaintiffs' bare preference for an MDL cannot override the first-filed rule. Moreover, Plaintiffs' request that the Court defer its ruling on Defendants Motion to Transfer pending the outcome of their MDL Motion contravenes the JMPL's expressed position that centralization under § 1407 "*should be the last solution after considered review of all other options*." Consistent with this position, the JPML has made clear it prefers that actions pending in different districts be brought into a single district via § 1404 transfer and subsequent consolidation rather than via § 1407 transfer and centralization, given the heightened administrative burden imposed by the latter. Section 1404 transfer is not only feasible here, but is the best and most efficient mechanism for adjudicating the related actions.

For all these reasons, the Court should enter an order transferring this consolidated action to the Eastern District of Missouri.

## BACKGROUND

### A.    TPS, Cognizant, and the Incident

TPS is a healthcare technology company incorporated in Delaware, with its principal place of business in Earth City, Missouri. ECF 1 (Compl.) ¶ 11; Declaration of Heather Donohue ("**Donohue Decl.**") ¶ 5. TPS provides software services to healthcare organizations such as providers and payers. ECF 1 ¶ 17; Donohue Decl. ¶ 3. The complaints in the actions consolidated here (the "**New Jersey Actions**") generally allege that, on or about October 2, 2025, TPS identified suspicious activity in a web portal that some healthcare organizations use to access TPS's services, resulting in the compromise of sensitive patient information (the "**Incident**"). Each of the New Jersey Actions asserts various claims relating to the Incident, with negligence being the only cause of action common across all complaints, and seeks to certify a nationwide class of persons affected

by the Incident. Each of the New Jersey Actions name TPS as a defendant.

Many of the New Jersey Actions also name TPS's (multiple, separate corporate layers removed) apex parent Cognizant Technology Solutions Corporation, a publicly-traded Delaware corporation with its principal place of business in New Jersey. Donohue Decl. ¶ 5.[2] That naming of Cognizant (TPS's far-removed apex parent) is the only purported basis for any of the related actions having been filed in New Jersey. TPS itself has no significant or relevant connection to New Jersey: neither its principal place of business, its IT infrastructure, nor those persons knowledgeable about that infrastructure are located there. *Id*. ¶ 7. No plaintiff in any of the related actions has alleged (nor could they) undercapitalization, fraud, or any other basis for disregarding the corporate separateness of TPS and Cognizant. Instead, most of the complaints that name Cognizant allege no basis for doing so beyond its status as TPS's apex parent. A few make bald, conclusory, "information and belief" allegations that TPS and Cognizant share a management structure and key decisionmakers.[3] But the facts are otherwise: TPS is a separately incorporated entity with its own operating agreement, officers, books and records, financial accounts, and contractual relationships. Donohue Decl. ¶ 6. Cognizant, on the other hand, functions as a holding company and does not have any day-to-day operations relevant to the software services TPS provides. *Id.*

Three of the New Jersey Actions originally named specific healthcare organizations that allegedly collected the plaintiffs' information, none of whom is located in New Jersey. Not

---

[2] TPS's parent company is Cognizant TriZetto Software Group, Inc., whose parent company is Cognizant Domestic Holdings Corporation, whose parent company is the Cognizant Technology Solutions Corporation that is named as a party to some of the lawsuits here. Donohue Decl. ¶ 5.

[3] *See* Compl. ¶¶ 50-53, ECF 1-11, *Lytle et al. v. TriZetto Provider Solutions, LLC, et al.*, Case No. 2:25-cv-18938 (allegations on "information and belief"); Compl. at 1 & ¶¶ 18-19, ECF 1-15, *Patterson v. Cognizant Technology Solutions Corp. et al.*, Case No. 2:26-cv-02570 (allegations "upon information and belief as to all other matters" than plaintiff's actions and experiences).

coincidentally, after Defendants sought leave to file this Motion to Transfer, Plaintiffs dismissed each of these healthcare organization defendants given their obvious lack of relevant ties to New Jersey. *See* ECF 18, 39, 40. Regardless, the lack of relevant ties to this District for this consolidated action remains; indeed, every one of the named plaintiffs in the New Jersey Actions is a resident of a state other than New Jersey.

### B.      The Related Actions

This consolidated action is not the first putative class action against TPS related to the Incident. The first-filed pending action, *Niessing v. TriZetto Provider Solutions, et al.*, No. 4:25-cv-01861, was filed in the Eastern District of Missouri on December 19, 2025. *See* Declaration of Jason Fagelman ("**Fagelman Decl.**"), Ex. 1 (*Niessing* Complaint). Later-filed actions in the Eastern District of Missouri arising out of the Incident (the "**Missouri Actions**") have been consolidated into that first-filed action under the caption *In re TriZetto Provider Solutions Data Breach Security Litigation*. *See* Fagelman Decl., Ex. 2 (*Niessing* Order). Like the New Jersey Actions, the Missouri Actions all allege that the plaintiff(s) provided personal information to a healthcare organization that made use of TPS's services, and that the plaintiff's information was compromised in the Incident; all assert various common law claims including negligence; and all seek to certify a nationwide class of individuals affected by the Incident.

There are also two later-filed actions against TPS arising from the Incident pending in California, one in the Eastern District and one in the Northern District. *See Taylor v. Trizetto Provider Solutions, LLC et al*, 2:26-cv-00086 (E.D. Cal.); *Hahn v Open Door Community Health Centers et al*., 3:26-cv-02267 (N.D. Cal.) (together, the "**California Actions**"). TPS has filed § 1404 motions to transfer the California Actions to the Eastern District of Missouri for consolidation into the first-filed *Niessing* action. *See* Fagelman Decl., Ex. 3 (*Taylor* Motion); Fagelman Decl., Ex. 4 (*Hahn* Motion).

#### C.      Plaintiffs' Motion to the Judicial Panel on Multidistrict Litigation

On February 2, 2026, counsel for TPS and Cognizant met and conferred with counsel for Plaintiffs, and discussed TPS and Cognizant's view that all related actions pending in New Jersey ought to be transferred to the Eastern District of Missouri for consolidation pursuant to § 1404. *See* Fagelman Decl. ¶ 8. On February 6, 2026, counsel for Plaintiffs submitted a letter to this Court requesting consolidation of the related actions pending in New Jersey. *See* ECF 6. The letter stated that TPS and Cognizant did not oppose consolidation of the then existing New Jersey cases into a single case in the District of New Jersey, but expressly "reserve[d] their rights" to "seek transfer of any to-be-consolidated action in the District of New Jersey at a future date to a more appropriate venue, namely, the Eastern District of Missouri, where jurisdiction and venue exist, and where the first-filed action . . . is pending." *Id.* at 2.

On March 10, 2026, this Court entered an order consolidating the related actions pending in New Jersey into this consolidated action. *See* ECF 8. On March 12, 2026, counsel for TPS and Cognizant contacted counsel for Plaintiffs, reiterated their position that this consolidated action should be transferred under § 1404 to the Eastern District of Missouri for consolidation with the first-filed *Niessing* action, and asked Plaintiffs to state their position on transfer and consolidation. *See* Fagelman Decl. ¶ 9. Rather than respond, on March 17, 2026, Plaintiffs instead filed a motion with the JPML seeking transfer of related actions to this District for centralization here under § 1407 (the "**MDL Motion**"). *Id.* ¶ 10. On April 8, 2026, TPS, Cognizant, and multiple healthcare organization defendants filed responses in opposition to the MDL Motion. *Id.*

### LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of a change of venue under Section 1404 is to "prevent the waste

of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quotation omitted).

## ARGUMENT

### I.    The First-Filed Rule Applies

The New Jersey Actions should be transferred to the Eastern District of Missouri, Eastern Division for the simple reason that they are substantially similar to the earlier, first-filed *Niessing* action. The well-established first-filed rule applies when actions are pending in different federal courts that concern the "[s]ame issues" and have the "[s]ame parties," and "one case [was] initiated before the other." *Muhammad v. State Farm Indem. Co.*, 719 F. Supp. 3d 397, 411 (D.N.J. 2024) (summarizing caselaw); *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941) (adopting first-filed rule). When these requirements are satisfied, the court where the later-filed action is pending should generally transfer it to the court where the earlier-filed action is pending, unless there is some "equitable . . . reason not to apply the rule." *Id.* (court can in some situations dismiss or stay the action instead). ***The first-filed rule requirements are all satisfied here, and there is no equitable reason not to apply the rule and transfer the New Jersey Actions to the Eastern District of Missouri for further consolidation***.

First, the New Jersey Actions and the first-filed *Niessing* action indisputably concern the same issues. To establish that two cases involve the same issues, only a "high degree of similarity between the first-filed action and the later-filed case" is required. *Mazzei v. Heartland Payment Sys., LLC*, 2023 WL 6121318, at \*4 (D.N.J. Sept. 19, 2023). "[O]verlapping subject matter is the key; exact identity of claims is not required." *Catanese v. Unilever*, 774 F. Supp. 2d 684, 689 (D.N.J. 2011). Here, Plaintiffs themselves argued to the JPML that all of these actions "arise[] from Defendants' security practices involving Defendants' software, and the same data breach incident" and "allege[] that Defendants' practices violate common law and/or state data privacy

laws." ECF 12 at 10-11 (MDL Mot. 3-5). They cannot now credibly argue that these actions are not sufficiently similar.[4]

Second, the New Jersey Actions and the *Niessing* action share the same parties. They share the same putative plaintiff class, the relevant consideration when "the underlying cases are putative class actions." *Muhammad*, 719 F. Supp. 3d at 407 (cleaned up). The New Jersey Actions seek to certify a nationwide putative class of persons affected by the Incident, *see, e.g.*, ECF 1 ¶ 113; so does the *Niessing* action, *see* Fagelman Decl., Ex. 1 ¶ 143. These actions also share one common defendant, TPS. It is irrelevant that some of these actions also name TPS's far-removed apex parent Cognizant as a defendant, because the first-filed rule requires only a "substantial overlap" of parties, not identity. *FTC v. Neora, LLC*, 2020 WL 4282753, at *4 (D.N.J. July 27, 2020). To determine substantial overlap of parties courts look to the "main players," which here are (1) the putative nationwide plaintiff class and (2) TPS, the only party named in all of the New Jersey Actions and the primary defendant given it provided the software services allegedly involved in the Incident. *Tekno Products, Inc. v. Glove Trends Inc.*, 2019 WL 7184544, at *9 (D.N.J. Dec. 26, 2019).

Third, the *Niessing* action was filed before any of the actions consolidated here. This is a straightforward chronological inquiry: the *Niessing* action was filed on December 19, 2025, while the earliest of the actions consolidated here was the *Burge* action, filed on December 23, 2025.

Finally, there is no equitable basis for declining to apply the first-filed rule. It is "the rare case in which the first-filed rule fits the bill as a formal matter but then must give way on equitable

---

[4] TPS and Cognizant strongly disagree that these substantial similarities meet the higher threshold for § 1407 transfer and centralization, namely, that "common factual questions" are "sufficiently complex or numerous," *In re Honey Prod. Mktg. & Sales Pracs. Litig.*, 883 F. Supp. 2d 1333, 1333 (J.P.M.L. 2012), and "[i]ndividualized discovery and legal issues" are not, *In re Prescription Drug Co-Pay Subsidy Antitrust Litig.*, 883 F. Supp. 2d 1334, 1335 (J.P.M.L. 2012). That issue is not before this Court, however.

grounds." *Muhammad*, 719 F. Supp. 3d at 411. ***Here, not only are there no equities weighing against application of the first-filed rule, but the equities weigh in favor of applying it***. One relevant equity is whether a party to one of the actions is engaged in procedural gamesmanship, such as by seeking to "box out" the other action by making "underdeveloped" filings in an attempt to preempt what they know is "waiting in the wings." *Id.* If anyone is playing procedural games here, it is Plaintiffs. As shown below, venue is not proper in this District even setting aside the first-filed rule. When TPS and Cognizant sought Plaintiffs' position on transfer to the Eastern District of Missouri, Plaintiffs began filing numerous duplicative actions in this District in an attempt to create a critical mass of cases here, and preemptively filed their MDL Motion with the JPML seeking centralization rather than articulate any legal basis for remaining in this District. The court should not reward such gamesmanship by making a "rare" (and meritless) equitable exception to the first-filed rule. *Muhammad*, 719 F. Supp. 3d at 411. Indeed, courts consistently reject attempts (like Plaintiffs' here) to evade the first-filed rule by filing an MDL motion. *See, e.g.*, *Prime Steakhouse v. Mowi ASA*, 2020 WL 1443759, at *7 (D. Me. Mar. 25, 2020) (granting transfer pursuant to § 1404, despite pending MDL motion, because "the MDL procedure is inappropriate as a first resort"); *Calderon v. Cargill*, Inc., 2013 WL 12205633, at *2 (C.D. Cal. Dec. 10, 2013) ("That Defendant might prefer an MDL . . . does not defeat the merits of transferring this action pursuant to the first-to-file rule."); *Schwartz v. Frito-Lay N. Am.*, 2012 WL 8147135, at *6 (N.D. Cal. Sept. 12, 2012) ("That Plaintiff's counsel might prefer an MDL . . . does not diminish the strength of Defendant's arguments under the first-to-file rule and 28 U.S.C. § 1404.").

Put simply, this Court should transfer the New Jersey Actions to the Eastern District of Missouri pursuant to the well-established first-filed rule, and reject Plaintiffs' transparent efforts

to delay this decision pending the outcome of the MDL Motion.

## II.    The Relevant Factors Weigh Strongly in Favor of Venue Transfer

Even apart from the first-filed rule, the New Jersey Actions should be transferred to the Eastern District of Missouri because venue is proper there and the factors this Court considers in deciding a venue transfer motion weigh strongly in favor of transfer there. *See* 28 U.S.C. § 1404(a).

### A.    Venue is proper in the Eastern District of Missouri.

Venue is proper in the Eastern District of Missouri because one of the defendants—the primary defendant, TPS—is at home there. 28 U.S.C. § 1391(b)(3). TPS has its principal place of business in Earth City, Missouri. Donohue Decl. ¶ 5. Cognizant, the only other remaining defendant, consents to transfer to the Eastern District of Missouri, where it has already been named in several of the Missouri Actions consolidated into the first-filed *Niessing* action.

### B.    Transfer to the Eastern District of Missouri is in the interest of justice and the convenience of the parties and witnesses.

Transfer to the Eastern District of Missouri is in the interest of justice and the convenience of the parties and witnesses. The Third Circuit has identified numerous public and private factors that courts should balance in deciding venue transfer motions. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d. Cir. 1995). Here, the vast majority of these factors favor transfer to the Eastern District of Missouri.

To begin, the Eastern District of Missouri better serves the parties' convenience and preferences. *Jumara*, 55 F.3d at 879. The District of New Jersey is inconvenient for most parties, given that none except Cognizant (a holding company and far-removed apex parent) are located there. As shown, neither TPS, the primary defendant, ***nor any of the named plaintiffs in the New Jersey Actions are located in New Jersey***. While the named plaintiffs did file suit in the District of New Jersey, it is well-established that in putative class actions, particularly putative nationwide

class actions where (like here) the named plaintiffs do not reside in their chosen forum, "the plaintiff's choice of forum is generally given less weight." *Geraci v. Red Robin Int'l, Inc.*, 2019 WL 2574976, at *4 n.5 (D.N.J. June 24, 2019) (citing 2 Newberg on Class Actions § 6:38 (5th ed.)); *see also, e.g.*, *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 228 (D.N.J. 1996) (the putative "class representative's choice of forum is entitled to lessened deference").

The Eastern District of Missouri is also the better forum in light of where the claim arose, the convenience of witnesses and parties, and the location of books and records. *Jumara*, 55 F.3d at 879. When, as here, claims arise from the alleged compromise of "data stored on the cloud," courts often treat the claims as arising at the location of the defendant whose data systems were allegedly compromised—here, TPS. *See, e.g.*, *In re Mednax Services, Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1199 (S.D. Fla. 2022). As explained, TPS has no significant or relevant connection to New Jersey: neither its principal place of business, its IT infrastructure, nor those persons knowledgeable about that infrastructure are there. *See* Fagelman Decl. ¶ 7.

Public factors also weigh heavily in favor of the Eastern District of Missouri. These factors include "practical considerations that could make the trial easy, expeditious, or inexpensive" and "the relative administrative difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879. Since the first-filed *Niessing* action is already pending there, the New Jersey Actions can be consolidated into that action with little administrative burden, compared to the material and substantial inefficiencies that would result from litigating in both forums. Further, the most recent U.S. Courts' Judicial Caseload Profiles show that the Eastern District of Missouri's average time to disposition is 6.3 months, the average time to trial is 35.3 months, and only 3.7% of civil cases are over 3 years old. Conversely, the District of New Jersey's average time to disposition is 7.5

months, the average time to trial is 56.9 months, and 56.5% of civil cases are over 3 years old.[5] Venue transfer to the Eastern District of Missouri would thus result in a materially more efficient litigation.

Finally, "the familiarity of the trial judge with the applicable state law" tilts in favor of the Eastern District of Missouri. *Jumara*, 55 F.3d at 879. Although the choice-of-law issue for Plaintiffs' common law claims remains to be determined, it is unlikely that New Jersey state law will apply, given that neither plaintiffs nor TPS are located in New Jersey, and there is at least a reasonable probability that Missouri law will apply, since courts often apply the law of the defendant's principal place of business to claims arising from the allege compromise of data stored in "the cloud." *See, e.g.*, *Mednax*, 603 F. Supp. 3d at 1199. A judge based in the Eastern District of Missouri is likely to be more familiar with Missouri state law.

In sum, almost all relevant factors point toward the Eastern District of Missouri or are neutral. The only exception is the named plaintiffs' choice of forum, which is "given less weight" when, as here, the plaintiffs seek to represent a nationwide putative class and none are even citizens of New Jersey. *Geraci*, 2019 WL 2574976, at *4 n.5. The Eastern District of Missouri is thus the superior forum, and the New Jersey Actions should be transferred there.

## III.    Plaintiffs' Pending MDL Motion Should Not Affect This Court's Decision

Plaintiffs may respond that this Court should not transfer these actions to the Eastern District of Missouri because they have already filed a motion with the JPML seeking § 1407 transfer and centralization in this district. To the contrary, the JPML has repeatedly emphasized that § 1407 transfer and centralization "***should be the last solution after considered review of all***

---

[5] See Fed. Ct. Mgmt. Stats., U.S. District Court — Judicial Caseload Profile (Dec. 31, 2025), <https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile1231.2025.pdf>.

*other options*." *In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012) (emphasis added). The JPML expressly prefers for parties to first "[s]eek[] transfer under Section 1404(a) or seek[] to dismiss or stay duplicative actions under the first-to-file doctrine." *In re Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011). The JPML routinely "denie[s] centralization where there is a reasonable prospect that the resolution of Section 1404 motions could eliminate the multidistrict character of the actions." *In re Gerber*, 899 F. Supp. 2d at 1379. The Panel has applied this last-resort rule to deny centralization when, as here, the pending actions arose out of an alleged data incident. *E.g.*, *In re Hudson's Bay Co. Customer Data Sec. Breach Litig.*, 326 F. Supp. 3d 1372 (J.P.M.L. 2018) (centralization unnecessary for actions pending across three districts when § 1404 transfer could bring them all to the one of the districts); *In re Nelnet Servicing, LLC, Customer Data Sec. Breach Litig.*, 648 F. Supp. 3d 1377 (J.P.M.L. 2022) (similar).

To be clear, a "reasonable prospect" does not mean a certainty, and even when there is some question whether complete consolidation could be achieved through § 1404 transfer motions, the JPML prefers to wait for the relevant district courts to rule on such motions. As the JPML has explained:

> Section 1404 rulings also can aid the Panel in its decision whether and where to centralize a given litigation. As noted above, transfer under Section 1404 may moot the multidistrict character of a litigation and allow a consolidated proceeding in one court with jurisdiction over the pretrial, trial, and post-trial aspects of the litigation. Where Section 1404 transfer does not moot the multidistrict litigation, transfer may allow the Panel to better assess where a multidistrict litigation should be assigned.

*In re Gerber*, 899 F. Supp. 2d at 1380. In sum, and contrary to any suggestion otherwise, ***the JPML does not want this Court to wait on the JMPL's decision on the MDL Motion before deciding the Motion to Transfer—indeed, the opposite is true.*** There is thus no basis for this Court to defer or deny Defendants' Motion to Transfer merely because the MDL Motion is pending before the

JPML, particularly when transfer and consolidation of the related actions into the Eastern District of Missouri under Section 1404 can efficiently and cost-effectively move this litigation forward. *See, e.g.*, *Prime Steakhouse*, 2020 WL 1443759, at *7 (granting transfer pursuant to § 1404, despite pending MDL motion, because "the MDL procedure is inappropriate as a first resort").

## CONCLUSION

For these reasons, Defendants respectfully request that the Court transfer this consolidated action to the Eastern District of Missouri, Eastern Division, so that it can be consolidated with the first-filed case pending there.

Respectfully submitted,

Dated: May 6, 2026

NORTON ROSE FULBRIGHT US LLP


By: */s/ Sean Topping*

_____

SEAN TOPPING

Sean Topping, Bar No. 235462017
1301 Avenue of the Americas
New York, New York  10019-6022
Telephone:    (212) 318-3000
Facsimile:    (212) 318-3400
sean.topping@nortonrosefulbright.com

Jason K. Fagelman (*admitted pro hac vice*)
Joseph E. Simmons (*admitted pro hac vice*)
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
jason.fagelman@nortonrosefulbright.com
joseph.simmons@nortonrosefulbright.com

*Attorneys for Defendants TriZetto Provider Solutions LLC and Cognizant Technology Solutions Corporation*

- 13 -